## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Stephen Zehala,

    Plaintiff,

-v-                                      Case No. 2:10–cv–848

American Express, et al.,            Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

This case arises from the alleged improper furnishing of information about Plaintiff Stephen Zehala ("Plaintiff" or "Zehala") by Defendant to major credit reporting agencies in violation of the Fair Debt Collections Practice Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), and Ohio's Telephone Solicitation Sales Act ("TSSA"). This matter is before the Court on the following motions: Defendant American Express' ("AmEx") Motion to Dismiss, ECF No. 10; Plaintiff's Motion to Vacate Judgment, ECF No. 29; Defendant AmEx's Motion for Default Judgment, ECF No. 33; Plaintiff's Motion to be Granted a Pacer Account to File Pleadings Electronically, ECF No. 34; Plaintiff's Motion for Extension of Time to File Response, ECF No. 35; Plaintiff's Motion Requesting a PACER Account to File Pleadings Electronically, ECF No. 36; Plaintiff's Motion to Dismiss and Strike Exhibits, ECF No. 58; and AmEx's Motion to Strike Answer to Counterclaim, ECF No. 62.

## I. BACKGROUND

Zehala, who is proceeding pro se, resides in Franklin County, Ohio. Compl. ¶ 1, ECF No. 2. Defendants remaining in this litigation are AmEx and GC Services Limited Partnership ("GC"). Defendant AmEx notes that the Complaint's caption incorrectly identifies it as simply American Express; the proper name is American Express Bank, FSB.

Zehala states that he incurred debt for "personal, household, or family purposes." *Id.* ¶ 15. In the letters attached to the Complaint, he acknowledges the account in "my name Stephen Zehala acct ending * ***********77002." Compl. Exs. 1–2, PAGEID #: 33, 34, ECF No. 2-1. He alleges that Defendants AmEx and GC reported negative information to major credit reporting agencies, such as Experian, Trans Union, and Equifax. *Id.* ¶ 17. He further alleges that AmEx and GC made calls to him, *Id.* ¶ 28, and that in those calls and also in letters AmEx and GC made "threats to collect fees and costs" regarding his account. *Id.* ¶ 29. Zehala alleges AmEx sold or assigned the debt associated with his account and thus no longer owns that debt. *Id.* ¶¶ 45–45. He further alleges that GC had a contractual agreement with AmEx regarding the debt. Id. ¶ 86.

## II. AmEx's MOTION TO DISMISS

### A. Standard of Review

Defendant AmEx moves to dismiss Zehala's Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). A

claim survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

A court must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, however, plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). In the process of applying this standard, the Court must be cautious to remember that a pro se complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## B. Analysis

As an initial matter, the Court notes that AmEx's motion to dismiss was filed on October 14, 2010 simultaneously with its Answer. Answer, ECF No. 9; AmEx's Mot. Dismiss, ECF No. 10. Accordingly, the Court will construe AmEx's motion to dismiss as

a motion for judgment on the pleadings.[1] A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

On November 30, 2010, Zehala attempted to file a stipulation for extension of time to reply to that motion, which AmEx opposed. The Magistrate Judge struck the stipulation as improper under the Local Rules. *See* Order, ECF No. 32. Then, on December 10, 2010, Zehala filed a motion for extension of time to file a response to the motion to dismiss. Mot. Extension Time, ECF No. 35. That motion remains pending. Notwithstanding, Zehala filed his response to the motion to dismiss on December 23, 2010. ECF No. 37. AmEx filed its reply on December 28, 2010. ECF No. 38. Recently, on August 26, 2011, Zehala filed an additional supplemental memorandum opposing the motion to dismiss. ECF No. 61.

The Court **GRANTS** Zehala's motion for extension of time to file a response, ECF No. 35, and considers his response, ECF No. 37, as timely. The Court, however, will not consider Zehala's additional supplemental memorandum opposing the motion to dismiss, ECF No. 61, because it was filed over ten months after the initial motion to dismiss and because Zehala did not seek leave to file the supplemental memoranda as

---

[1] A motion to dismiss filed under Rule 12(b)(6), subsequent to the filing of an answer, cannot "properly lie because Rule 12(b) requires that '[a] motion making any of these defenses shall be made before pleading.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988 ) (quoting Fed. R. Civ. P. 12(b) ). However, Rule 12(h)(2) of the Federal Rules of Civil Procedure provides that a Rule 12(b)(6) defense may be raised by a motion for judgment on the pleadings pursuant to Rule 12(c). Accordingly, courts will generally construe a post-answer Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings. *See, e.g., Clarke v. Howard*, No. 405CV1977, 2006 WL 3700238 (N.D. Ohio Dec. 8, 2006). Therefore, the Court will consider the instant Rule 12(b)(6) motion as one for judgment on the pleadings and evaluate it pursuant to the standard for dismissal under Rule 12(b)(6). *Id.*

required by the Local Rules. See S.D. Ohio L.R. 7.2 (a)(2). While "pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991). Although the Court finds it appropriate to grant Zehala's motion for extension in this instance, Zehala is on notice that the Court is unlikely to be as lenient should he fail to comply with the Federal or Local Rules of Civil Procedure in the future.

In moving to the substantive matters, AmEx asserts that the claims Zehala brings against it must be dismissed because the FDCPA, the TCPA, and the TSSA are inapplicable to a creditor such as AmEx. The Court will address each argument in turn.

### 1. FDCPA Claims

AmEx first argues that Zehala's claims for violations of the FDCPA, 15 U.S.C. § 1692 et seq., must be dismissed because AmEx is not a debt collector and thus not subject to the statute. Zehala's brief response argues that the principal purpose of AmEx's business could be interpreted as both advancing and collecting debt, thus bringing AmEx within the purview of the FDCPA.

The Court, however, agrees with AmEx that it is not a "debt collector" for purposes of the FDCPA and that the statute therefore does not apply to this case. The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute

defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

"The term 'debt collector' has a particular meaning, however: it refers only to persons attempting to collect debts due 'another.'" *MacDermid v. Discover Fin. Servs.*, 488 F.3d 721, 735 (6th Cir. 2007); *see also Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky.2003) (considering it "well-settled" that "a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts"). "To this, the federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (internal quotation marks omitted). *See also MacDermid*, 488 F.3d at 735 (credit card company is not a "debt collector" for purposes of FDCPA as it is the "very party to whom the debt is due"); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 411 (6th Cir. 1997) (American Express not a "debt collector" for purposes of the FDCPA).

The Complaint alleges that the debt was incurred by Zehala with AmEx as the creditor. Thus, AmEx was attempting to collect its own debt when, if the allegations are accepted as true, it called and mailed letters to Zehala. Even accepting Zehala's allegation that AmEx both advances credit and collects debt does not bring AmEx within the scope of the FDCPA. While Zehala alleges in his Complaint that AmEx is a "debt

collector," more than mere legal conclusions and labels must exist to withstand a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 557. The Complaint contains no allegations of fact to support a plausible inference that AmEx is a debt collector. Thus, Zehala's claims under the FDCPA against AmEx, Counts VI-XVI, are dismissed.

## 2. TCPA Claims

AmEx argues that Zehala's claim under the TCPA, Count V, is insufficient because the TCPA is inapplicable to a creditor such as AmEx.[2] Zehala did not respond to AmEx's arguments regarding the inapplicability of the TCPA. However, in reading the Complaint in the light most favorable to Plaintiff, Zehala appears to allege that AmEx violated the TCPA through automatic dialing systems and/or artificial or prerecorded voice message dialers to both his home and cellular phones. As discussed below, the Court agrees that Zehala fails to state a claim with regard to AmEx's calls to his residential line. He does assert, however, a viable claim with regard to calls placed to his cellular phone.

The Telephone Consumer Protection Act, enacted to address certain telemarketing practices that Congress found to be an invasion of consumer privacy, regulates the use of automated telephone equipment. 47 U.S.C. § 227, *et seq*. Section 227(b)(1) of the TCPA provides in pertinent part:

> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United

---

[2]AmEx also summarily argues that "the TCPA provides for private causes of action in state court only." Def.'s Mot. Dismiss 7, ECF No. 10. While "[t]he jurisdiction of federal courts over private TCPA claims has been the subject of much debate[,]" the Sixth Circuit definitively held recently that "federal-question jurisdiction [over private TCPA claims] exists under the TCPA." *Charvat v. NMP, LLC, et al.*, ___F.3d___, 2011 WL 3805618, at *4 (6th Cir. Aug. 30, 2011) (following *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 465 (6th Cir. 2010)).

States—

>   (A) to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice—
>
>   >   (iii) to any telephone number assigned to a paging service, *cellular telephone service*, . . . [or]
>
>   (B) to initiate any telephone call to any *residential telephone line* using an artificial or prerecorded voice to deliver a message without prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)[.]

47 U.S.C. § 227(b)(1) (emphasis added).

### a. Calls made to Zehala's residential phone

In relevant part, the TCPA states that "[i]t shall be unlawful . . . to initiate any telephone call to any residential telephone line . . . using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call . . . is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B). The Federal Communications Commissions ("FCC") adopted regulations pursuant to § 227(b)(2)(B), which include two exemptions relevant to Zehala's TCPA claims.

First, § 227(b)(1)(B) imposes no liability for a prerecorded call if it "[i]s made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute telephone solicitation." 47 C.F.R. § 64.1200(a)(2)(iii).

Second, § 227(b)(1)(B) imposes no liability for a prerecorded call if it "[i]s made to any person with whom the caller has an established business relationship at the time the call is made." 47 C.F.R. § 64.1200(a)(2)(iv). *See, e.g., Meadows v. Franklin Collection Serv., Inc.*, Case No. 10-13474, 414 F. App'x 230, 235 (11th Cir. Feb. 11,

2011) (quoting 47 C.F.R. 64.1200(a)(2)(iv)). "The FCC has also clarified that 'all debt collection circumstances involve a prior or existing business relationship.'" *Id.* (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8771–72, ¶ 36 (1992)).

Viewing the facts alleged in the Complaint in a light most favorable to Plaintiff, both exceptions apply to the conduct alleged in Zehala's Complaint regarding phone calls to his residential line. Prerecorded telephone calls made for the purpose of debt collection have consistently been found to fit both exemptions for calls not containing "unsolicited advertisement or constitute telephone solicitation" and calls made to a recipient "with whom the caller has an established business relationship." *See, e.g., Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 29, 2010).

Zehala's Complaint and exhibits establish that he had an established business relationship with AmEx—as debtor and creditor—at the time of the calls. *See, e.g., Sardinas v. Geithner*, 2:10-CVB-501JCM, 2010 WL 2696626, at *3 (D. Nev. July 6, 2010) (dismissing TCPA claim based upon existence of established business relationship with the consumer). Accordingly, the Court grants AmEx's motion to dismiss with regards to Zehala's TCPA claim as based on calls to his residential line.

### b. Calls made to Plaintiff's cellular phone

To state a claim under the TCPA for calls made to a cellular phone, a plaintiff must establish that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A); *see generally Pugliese*,

2010 WL 2632562. Defendant bears the burden of establishing prior consent. *See Pollock v. Bay Area Credit Serv.*, LLC, No. 08-61101-Civ., 2009 WL 2475167, at *9–10 (S.D. Fla. Aug. 13, 2009). The FCC stated in a 2008 declaratory ruling that, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 23 F.C.C.R. 559, 564.

Zehala alleges that AmEx "used an automatic telephone dialing systems, and/or predictive dialer systems and/or artificial prerecorded voice message auto dialers as defined by the TCPA when calling him regarding the alleged account that caused expense to him such as the result of calling cell phone numbers or other such fees." Compl. ¶ 56. He also states that AmEx "never had and still does not have express permission from Plaintiff to call him at any phone number regarding the alleged account . . . ." *Id.* ¶ 54.

AmEx does not address Zehala's claim that it violated the TCPA by also calling his cellular phone, nor does it address whether Zehala released his cell phone number to it. Additionally, the Court is aware of no precedential authority demonstrating that the exemption for an established business relationship in section 227(b)(1)(B) applies to claims brought under section 227(b)(1)(A). Rather, the exemption appears to qualify the language of only section 227(b)(1)(B) regarding residential lines. Notably, persuasive authority from other circuits suggests that the exemption for an established business relationship in section 227(b)(1)(B) does not apply to claims brought under section 227(b)(1)(A). *See, e.g., Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011).

Taking the facts in the light most favorable to Plaintiff, Zehala pleaded that a call was made to a cell phone by the use of any automatic dialing system or an artificial or prerecorded voice and without his prior express consent. Compl. ¶¶ 54, 56. Accordingly, the Court finds Zehala sufficiently pleads a violation of the TCPA under section 227(b)(1)(A)(iii) for calls to his cellular phone to withstand a motion to dismiss.

### 3. TSSA claims

AmEx also asserts that Zehala's TSSA claims must fail because the TSSA is inapplicable to a creditor such as AmEx. Zehala did not respond to AmEx's arguments regarding the inapplicability of the TSSA.

The Court notes that within the 31-page, 337 paragraph Complaint, Zehala mentions the TSSA only once, stating that "Defendants are subject to, and required to abide by, the laws of the United States and the State of Ohio, which include [*inter alia*] . . . the Telephone Solicitation Sales Act . . . ." Compl. ¶ 6. Although Zehala lays out 64 causes of action in the Complaint, each one referencing a state or federal statute, he does not ever cogently state a claim based on an alleged violation of the TSSA. Even though the Court holds Zehala's Complaint to a more lenient standard because he is proceeding pro se, it is not required to parse together any possible claim deriving from a set of facts. Moreover, even if Zehala did assert a plausible claim under the TSSA, supervised financial institutions, such as a bank like AmEx, are exempt from the statute. Ohio Rev. Code § 4719.01(B)(9). Accordingly the Court grants AmEx's motion to dismiss with regard to any purported TSSA claim.

### III. DEFAULT JUDGMENT

On October 14, 2010, AmEx filed its Answer and counterclaims for, *inter alia*,

breach of contract and unjust enrichment against Zehala. ECF No. 9. In its cournterclaims, AmEx alleged that Zehala was the holder of a Business Platinum Card that enabled him to charge items to a Business Platinum Card Account (Account No. xxxx-xxxxxx-77002). *Id.* ¶ 3, PAGE ID# 127. AmEx further alleged that Zehala is currently indebted over $29,000 to AmEx and has failed to pay any portion of that amount. *Id.* ¶¶ 12–13, PAGE ID# 129. It brings claims for breach of contract and unjust enrichment seeking judgment in the amount of the debt plus fees. *Id.* ¶¶ 10–24.

On November 9, 2010, AmEx filed an application to the Clerk of Court for an entry of default against Zehala for his failure to serve a responsive pleading to the counterclaims. ECF No. 21. An Entry of Default was entered against Zehala pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 22. The Court notes that AmEx's Motion for Default Judgment, ECF No. 33, is still pending.

Soon thereafter on November 30, 2010, Zehala filed a Motion to Vacate Judgment. ECF No. 29. Pointing to Rule 55(c) which provides that the Court may set aside an entry of default for good cause, Zehala reminds the Court that he is proceeding pro se and argues he inadvertently overlooked the counterclaims at the end of AmEx's Answer and that as soon as he realized his oversight, he filed his motion to vacate judgment. Then, approximately nine months later on August 26, 2011, Zehala filed a motion to dismiss the counterclaims as well as an answer to those counterclaims. Zehala's Mot. Dismiss, ECF No. 58; Zehala's Answer, ECF No. 59. Zehala did not receive leave of court to file either his motion to dismiss or his answer.

Rule 55(c) states that a "court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "When a [party] seeks relief from a default that has

been entered by the clerk upon a [the opposing party's] request, the district court enjoys considerable latitude under the 'good cause shown' standard." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). "In addition, even negligent conduct by a [party] that is "careless and inexcusable" may still qualify for relief under the "good cause" standard required to set aside an entry of default." *Union Cent. Life Ins. Co. v. Anchor Fin. Servs.*, 2010 WL 4642896, at *3 (S.D. Ohio Oct. 6, 2010) (citing *Shepard Claims Service, Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986)).

The Court evaluates the adequacy of Zehala's showing of cause in light of whether (1) AmEx will be prejudiced; (2) Zehala has a meritorious defense; and (3) Zehala's culpable conduct led to the default. *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990). In the context of setting aside a clerk's entry of default—as opposed to a default judgment—the court balances these factors more leniently to reflect the strong policy preference for trial on the merits. *Shepard Claims Serv., Inc.*, 796 F.2d at 193–94 (6th Cir. 1986). And "[a]lthough 'all three factors must be considered in ruling on a motion to set aside an entry of default,' when a [party seeking to set aside the default] has a meritorious defense and the [opposing party] would not be prejudiced, 'it is an abuse of discretion for the district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead.'" *United States v. $22,050 United States Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (quoting *Shepard*, 796 F.2d at 194).

For Rule 55(c)'s purposes, a "meritorious defense" exists if "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d

391, 399 (6th Cir. 1987) (citation omitted). "If a defense is 'good at law,' regardless of the likelihood of success, it will be considered meritorious." *Burrell v. Henderson*, 434 F.3d 826, 834 (6th Cir. 2006) (quoting *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983)).

Zehala's proposed answer and motion to dismiss, which deny responsibility for the alleged debt, assert, *inter alia*, a statute of limitations defense which qualifies as a "meritorious defense" under the rule. AmEx did not oppose the relief requested by Zehala and thus makes no argument that it will be prejudiced by the setting aside of the clerk's entry of default. Under these circumstances, the Court finds that Zehala has established "good cause," entitling him to relief from the Clerk's entry of default.

Accordingly, the clerk's entry of default is hereby **VACATED**. Zehala's motion to vacate judgment is **GRANTED IN PART** as it pertains to setting aside the entry of default, but **DENIED AS MOOT** as it pertains to vacating a default judgment because this matter never proceeded to default judgment. ECF No. 29. Additionally, AmEx's motion for default judgment against Zehala is **DENIED**. ECF No. 33.

Because Zehala's Motion to Dismiss and Answer to the counterclaims were filed untimely and without leave, ECF Nos. 58 & 59, the Court **GRANTS** AmEx's motion to strike those filings. AmEx Mot. Strike, ECF No. 62.

Zehala shall have fourteen days from the date of this Order to seek leave of Court to file *either* an Answer *or* a motion to dismiss with respect to AmEx's counterclaims. Zehala is on notice that the Court will not be lenient should he fail to comply with this order and with the Federal Rules of Civil Procedure in the future.

## IV. PACER ACCOUNT

Zehala filed two motions seeking that he be granted a PACER account so that he can file electronically. Mot. Pl. to be Granted a Pacer Account to File Pleadings Electronically, ECF No. 34; Pl.'s Mot. Requesting a PACER Account to File Pleadings Electronically, ECF No. 36.

The Southern District of Ohio's Local Rule 83.5(b) states that "[i]f the Court permits, a party to a pending proceeding who is not represented by an attorney may register as a Filing User solely for the purposes of that action." S.D. Ohio L. R. 83.5(b).

The Court finds that Zehala, like most pro se litigants, is successfully filing documents manually in the Clerk's Office. At this time, the Court does not find cause to permit Zehala to register for electronic filing for this action. Accordingly, Zehala's motions for a PACER account are **DENIED**. ECF Nos. 34 and 36.

## V. CONCLUSION

Based on the above, the Court orders as follows:

1. Defendant American Express' ("AmEx") Motion to Dismiss, ECF No. 10, is **GRANTED IN PART** and **DENIED IN PART**. Zehala's claims against AmEx under the FDCPA, Counts VI–XVI, are **DISMISSED WITH PREJUDICE**. Zehala's claim against AmEx under the TCPA as it pertains to his residential telephone line is **DISMISSED WITH PREJUDICE**. Zehala's claim against AmEx under the TCPA as it pertains to his cellular telephone remains pending.

2. Plaintiff's Motion to Vacate Judgment, ECF No. 29, is **GRANTED IN PART** as it pertains to setting aside the entry of default, but **DENIED AS MOOT** as it pertains to vacating a default judgment because this matter never proceeded to default judgment. The clerk's entry of default, ECF No. 22, is hereby **VACATED**.

3. Defendant AmEx's Motion for Default Judgment, ECF No. 33, is **DENIED**.

4. Plaintiff's Motion for Plaintiff to be Granted a Pacer Account to File Pleadings Electronically, ECF No. 34, is **DENIED**.

5. Plaintiff's Motion for Extension of Time to File Response, ECF No. 35, is

**GRANTED**, and his response, ECF No. 27, is considered to be timely.

6. Plaintiff's Motion Requesting a PACER Account to File Pleadings Electronically, ECF No. 36, is **DENIED**.

7. AmEx's Motion to Strike Answer to Counterclaim, ECF No. 62, is **GRANTED**. Zehala's Motion to Dismiss and Strike Exhibits, ECF No. 58, and Zehala's Answer, ECF No. 59, are **STRICKEN**.

**IT IS SO ORDERED.**

*[signature]*

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT